IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Cincinnati Insurance Company, | : | Case No. 3:06 CV 2729 |
|     Plaintiff, | : | |
| vs. | : | |
| St. Paul Protective Insurance Company, | : | **MEMORANDUM DECISION AND ORDER** |
|     Defendant. | : | |

Parties to this insurance case which was removed from the Court of Common Pleas for Lucas County, Ohio, have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U. S. C. § 636(c). Pending are the following: (1) Defendant's Motion for Summary Judgment (Docket No. 7), Plaintiff's Opposition and Supplement (Docket Nos. 18 & 25) and Defendant's Reply (Docket No. 22); (2) Plaintiff's Cross-Motion for Summary Judgment (Docket No. 19) and Defendant's Opposition (Docket No. 22); (3) Defendant's Motion for Extension of Time (Docket No. 21) and Plaintiff's Opposition (Docket No. 24); and (4) Defendant's Motion to Strike (Docket No. 23) and Plaintiff's Opposition (Docket No. 26).

For the reasons that follow, Defendant's Motion for Summary Judgment is granted, Plaintiff's Motion for Summary Judgment is denied, Defendant's Motion for Extension of Time is denied as moot and Defendant's Motion to Strike is granted.

## THE PARTIES

Cincinnati Insurance Company (Cincinnati), licensed in the State of Ohio, is an insurance company engaged primarily in the underwriting and pricing of property casualty business insurance (Docket No. 1, Complaint, ¶ 2).

Northbrook Property and Casualty Insurance Company, now known as St. Paul Protective Insurance (St. Paul), is an Illinois corporation specializing in the sale of business owner policies (Docket No. 1, Complaint, ¶ 3; Docket No. 1, Notice of Removal, ¶ 7).

Tri-C Construction Company (Tri-C), an Ohio corporation whose home office is in Akron, is a national contractor that offers construction management, general contracting and design-build projects. Www.tric-construction.com. At all times relevant to these proceedings, Tri-C was insured by Plaintiff.

Smith Crane Service is a supplier of hydraulic cranes and operators. Www.smithcrane.com.

Sawyer Steel Incorporated (SSI) is an Ohio steel contractor with its principal place of business in Holland, Ohio. At all times relevant to these proceedings, SSI was insured by St. Paul.

Cedarwood Development is a commercial developer located in Akron, Ohio (Docket No. 1, Complaint, ¶ 11). During the pendency of the litigation in state court, Cedarwood Development was dismissed, without prejudice, as a party defendant.

Paul Mowry was employed by SSI (Docket No. 1, Complaint, ¶ 4). Paul Mowry was married to Teresa M. Mowry, Administrator and Personal Representative of his estate (Docket No. 1, Complaint (Docket No. 1, Complaint, ¶ 7). Christopher Mowry is Paul Mowry's son (Docket No. 1, Plaintiff's Exhibit A, ¶ 2).

## FACTUAL BACKGROUND

On August 18, 2003, Tri-C, the general contractor, and SSI, the subcontractor, entered into a contract for building an Aldi grocery store located at 3015 Glendale Avenue in Toledo, Ohio. SSI was hired to erect the steel in the grocery store. Pursuant to contract, SSI was required to (1) carry general liability and comprehensive property damage insurance during the life of the project to protect Tri-C and SSI from damage to persons and property arising out of and from the performance of the contract and (2) indemnify, defend and save Tri-C and hold it harmless from all claims for damages arising out of its work. SSI was insured under a fire insurance policy and commercial general liability policy through Westchester Fire Insurance Company and St. Paul, respectively, from January 1, 2003 through January 1, 2004. Tri-C was included as an additional insured in SSI's policy (Docket No. 10, Exhibit 1).

In October 2003, SSI began erecting the steel for the Aldi grocery store in Toledo, Ohio (Docket No. 1, Plaintiff's Exhibit A, ¶ 8). On October 8, 2003, SSI employee Paul Mowry sustained injuries when he fell 16½ feet to the ground cracking his skull and sustaining other injuries (Docket No. 1, Plaintiff's Exhibit A, ¶s 28 & 38). Paul Mowry died as a result of those injuries on November 25, 2003 (Docket No. 1, Plaintiff's Exhibit A, ¶ 49).

On May 12, 2004, Teresa Mowry and Christopher Mowry filed a survival and wrongful death complaint for damages in Lucas County Common Pleas Court against, *inter alia*, Tri-C, SSI and Smith Crane (Docket No. 1, Complaint for Declaratory Judgment, ¶ 8). St. Paul refused Tri-C's request to provide a defense and indemnification (Docket No. 1, Complaint for Declaratory Judgment, ¶s 14, 15 & 17). Tri-C through its insurance carrier Cincinnati settled with Paul Mowry's estate and were dismissed as a party from the lawsuit in common pleas court. A jury found in favor of SSI and Smith Crane and dismissed the case against them (Lucas County Common Pleas Court, Case No. G-CI 200403106, co.lucas.oh.us/onlinedockets).

Tri-C assigned its right, title and interest to any litigation against St. Paul to Cincinnati (Docket No. 1, Complaint for Declaratory Judgment, ¶ 28).  Cincinnati filed a complaint for declaratory relief in the Common Pleas Court of Lucas County, Ohio, seeking indemnification from St. Paul for all attorney fees, defense costs and settlement costs incurred in the Mowry lawsuit (Docket No. 1, Complaint for Declaratory Judgment).  St. Paul removed the case to federal court and filed a Motion for Summary Judgment.  Cincinnati filed a Motion to Certify Questions of State Law to the Ohio Supreme Court and a request for leave to defer adjudication of the Motion for Summary Judgment until after the Court decided the merits of the Motion to Certify.  The Court denied the Motion to Certify.  Pending before the Court are Cross-Motions for Summary Judgment, St. Paul's Motion for Extension of Time and St. Paul's Motion to Strike.

## STANDARDS OF REVIEW

*Motion for Summary Judgment*

The summary judgment procedure is designed to dispose of cases wherein there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (*citing LaPointe v UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993)).

The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case.  *Celotex Corporation v. Catrett*, 106 S. Ct. 2548, 2552-2553 (1986).  In the face of Defendant's properly supported Motion for Summary Judgment, the Plaintiff cannot rest on his or her allegations to get to the jury without significant probative evidence tending to support the

complaint. *Anderson v. Liberty Lobby, Incorporated*, 106 S. Ct. 2505, 2510 (1986) (*citing First National Bank of Arizona v. Cities Services Co.*, 88 S. Ct. 1575, 1593 (1968)). The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff. *Id.* at 2512.

To oppose a motion for summary judgment successfully, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industry Company v. Zenith Radio Corporation*, 106 S. Ct. 1348, 1355 (1986). In determining if the facts are material, the court must look to the substantive law. The evidence of the non-movant is then taken as true and all justiciable inferences are drawn in his or her favor. *Anderson*, 106 S. Ct. at 2513 (*citing Addickes v. S.H. Kress & Co.*, 90 S. Ct. 1598, 1609-1610 (1970)). The Court must refrain from resolving conflicts in the evidence or making credibility determinations. *Id.* If, after deciding, the dispute about a material fact is genuine, summary judgment should be denied.

Once the moving party has met its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex,* 106 S. Ct. at 2552-53. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. *Pierce v. Commonwealth Life Insurance*, 40 F.3d 796, 800 (6th Cir. 1994). The non-moving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Company*, 8 F.3d 335, 339-340 (6th Cir. 1993). If, after adequate time for discovery, the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim or her claim, summary judgment is appropriate. *Celotex*, 106 S. Ct. at 2552-53.

***Motion to Strike***

Pursuant to FED. R. CIV. P. 12(f), upon timely motion or upon the court's own initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Engineering & Manufacturing Services, LLC v. Ashton,* 2007 WL 2733927, *1 (N. D. Ohio 2007). The motion to strike is timely if made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party. FED. R. CIV. P. 12 (f). The motion may be made by the court on its own initiative at any time. FED. R. CIV. P. 12 (f).

## DISCUSSION

*Motions for Summary Judgment*

During the pendency of the underlying state court litigation, Tri-C had an expectation that, pursuant to the subcontract agreement, St. Paul would assume its defense and indemnify it against the allegation of negligence made by plaintiffs. Instead, St. Paul refused to participate in the Mowry suit and Tri-C's insurer, Cincinnati, actively defended it in the state court litigation. Ultimately, Tri-C and plaintiffs settled the lawsuit. Tri-C assigned its right, title and interest in any claims to Cincinnati so that it could pursue a claim against St. Paul for its refusal to defend or indemnify it in the state court case. Cincinnati filed a civil action in common pleas court seeking more than $200,000 it paid in settlement to plaintiffs. St. Paul (Defendant) removed the case to this Court.

In its Motion for Summary Judgment, Defendant seeks, as a matter of law, an order that it owed no duty to defend or indemnify Tri-C. Defendant argues that the insured endorsement to the insurance agreement has been defined to include Tri-C as an additional insured for purposes of liability arising from SSI's negligence, not Tri-C's negligence. In its Motion for Summary Judgment, Tri-C seeks, as a matter of law, an order that the language used in the endorsement of the policy of insurance insures that

6

Defendant was obligated to defend and indemnify Tri-C merely if an injury was causally connected to the erection of the steel on the project.

The threshold issue is whether Defendant breached the terms of the insurance contract that required SSI to protect Tri-C from damages to persons or property arising out of or resulting from the performance of the subcontract agreement[1].  In August 2003, SSI and Tri-C entered a subcontract agreement requiring SSI to carry workers' compensation insurance, automobile liability insurance, general public liability and comprehensive property damage coverage protecting SSI, Tri-C, the owner and the work against injury to persons or property rising out of or resulting from the performance of the agreement.  This preprinted contract also required that SSI indemnify, defend and save Tri-C harmless from all claims of any nature whatsoever for damages either to person or property arising out of the carrying on of all work.  In the event that Tri-C was compelled to pay any amount on account of any claim or damages due to the subcontract agreement or the work done thereunder, SSI agreed to reimburse Tri-C for the amount of money paid and the attendant expenses (Docket No. 18, Exhibit 3, ¶ 11).

SSI had previously purchased a policy with endorsements for coverage of additional protected persons (Docket No. 1, Plaintiff's Exhibit B).  Effective January 1, 2003, an endorsement to SSI's policy altered those who were protected under the policy to include any person or organization required in a written contract to show an additional protected person is an "additional protected person" as defined under the terms of the insurance contract (Docket No. 18, Exhibit 4).

The parties concur that Ohio law governs this action.  In Ohio, an insurance policy is considered a contract.  *Westfield Insurance Company v. Galatis,* 100 Ohio St.3d 216, 219, 797 N.E.2d 1256, 1261

---

[1] This indemnity agreement is within the scope of OHIO REV. CODE § 2305.31 which bars indemnification in construction contracts.  This case involves an insurance contract, not a construction indemnity agreement.  Section 2305.31 is not relevant to the validity and enforceability of the insurance contract.

7

(2003).  When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement.  *Id.* (*citing Hamilton Insurance Services, Incorporated v. Nationwide Insurance Companies*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999); *citing Employers' Liability Assurance Corporation v. Roehm*, 99 Ohio St. 343, 124 N. E. 223, syllabus (1919); *See also,* Section 28, Article II, Ohio Constitution).  Initially the insurance contract is examined as a whole with the presumption that the intent of the parties is reflected in the language used in the policy, *Id.* (*citing Kelly v. Medical Life Insurance Company,* 31 Ohio 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus (1987)), unless another meaning is clearly apparent from the contents of the policy.  *Id.* (*citing Alexander v. Buckeye Pipe Line Company,* 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus (1978)).  When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.  *Id.*  As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.  *Id.* (*citing Gulf Insurance Company v. Burns Motors, Incorporated,* 22 S.W.3d 417, 423 (Texas 2000)).

The endorsement at issue in the insurance contract states:

**How Coverage is Changed**

There are two changes which are described below.

1. The following is added to the Who Is Protected Under This Agreement section.  This change adds certain protected persons and limits their protection[2].

    **Additional protected person**.  The person or organization named below is an additional protected person as required by a contract or agreement entered into by you.  But only for covered injury or damage arising out of:

---

[2] Any person or organization required in a written contract to show an additional protected person is an additional protected person.

8

- your work[3] for that person or organization;

Defendant claims that the Court should give the "arising out of" language in the endorsement its natural and commonly accepted meaning expressed in *Tomlinson v. Skolnik*, 540 N. E. 2d 716 (1989). *Tomlinson* has been overruled by *Schaefer v. Allstate Insurance*, 76 Ohio St. 3d 553, 668 N. E. 2d 913 (1996), and subsequently superseded by statute. *See Smock v. Hall,* 132 Ohio App. 3d 478, 725 N. E. 673 (1999). Under general principles of contract law, the term "arising out of" has been defined to mean "originating from," "growing out of," or "flowing from." *Nationwide Insurance Company v. Auto-Owners Mutual Insurance Company,* 37 Ohio App.3d 199, 202, 525 N.E.2d 508, 510-511 (1987). The term has also been used to mean "causally connected with" not proximately caused by. *Id.* (*citing Manufacturers Casualty Insurance Company v. Goodville Mutual Casualty Company*, 403 Pa. 603, 607, 170 A. 2d 571, 573 (1961)).

Applying the general contract principles to the language in the endorsement, including all the probable definitions of the term "arising out of," the Magistrate finds that the endorsement in the insurance policy is not ambiguous or uncertain. The policy clearly states that Tri-C was an additional insured and not a named insured. The policy's endorsement defines the scope of such coverage in two relevant ways. First, the policy expressly limits its coverage to liability arising out of the subcontract agreement. Second, the contract expressly excludes coverage for covered injury unless it arose from SSI's work for Tri-C. Simply, the language of the endorsement does not establish an independent

---

[3]
*Your work* means:
- any work that you're performing or others are performing for you; or
- any service that you're providing or others are providing for you.

(Docket No. 18, Exhibit 3).

9

obligation on the part of Defendant that unequivocally brings recovery for Tri-C's own negligence within the coverage afforded by the policy. Inasmuch as Tri-C was sued for its own negligent acts and not SSI's work arising under the subcontract agreement, the policy is unenforceable against Defendant for the claims against Tri-C. Defendant had no duty to defend or indemnify Tri-C.

Accordingly, Plaintiff's Motion for Summary Judgment is denied. Defendant's Motion for Summary Judgment is granted.

*Defendant's Motion for Extension of Time*

Defendant submits that it is entitled to an extension of time under FED. R. CIV. P. 56(f) to conduct discovery in opposition to Plaintiff's damage claims if this Court denies Defendant's Motion for Summary Judgment. Defendant contends that if the Court grants its motion, the request for an extension of time is rendered moot.

The Magistrate finds that since Defendant's Motion for Summary Judgment is granted, additional time to complete discovery is unnecessary. Defendant's request for an additional time to complete discovery is therefore denied as moot.

*Defendant's Motion to Strike*

In response to Defendant's Motion for Summary Judgment, Cincinnati Insurance Company filed a Motion for Summary Judgment supported by the affidavits of James Carter, Tri-C's project manager and Marc J. Schambow, Tri-C's claims manager and the amended affidavit of Marc J. Schambow. Defendant argues that since Tri-C was not a party to its policy of insurance issued to SSI, Plaintiff is precluded from providing parol evidence of Tri-C's intent.

The Magistrate agrees that any intentions not expressed in the insurance contract may not be

shown by parol evidence, particularly from a person who is not a party to the contract. In fact, the general rule is that contracts should be construed so as to give effect to the intention of the parties. *Aultman Hospital Association v. Community Mutual Insurance Company,* 46 Ohio St.3d 51, 53, 544 N. E.2d 920, 923 (1989) (citations omitted). Where the parties, following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions. *Id.* (*citing Henderson-Achert Lithographic Co. v. John Shillito Company*, 64 Ohio St. 236, 252, 60 N. E. 295, 298 (1901); *See also*, *Charles A. Burton, Incorporated v. Durkee*, 158 Ohio St. 313, 49 O. O. 174, 109 N. E.2d 265 (1952)). Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence. *Id.* (*citing Charles A. Burton, Incorporated, supra,* at paragraph two of the syllabus; *Steel Sanitary Company v. Pangborn Corporation*, 38 Ohio App. 65, 70, 9 Ohio Law Abs. 6, 8, 175 N. E. 615, 616-617 (1930)). There can be no implied covenant in a contract in relation to any matter that is specifically covered by the written terms of the contract. *Id.* at 53-54 (*citing Kachelmacher v. Laird*, 92 Ohio St. 324, 110 N.E. 933, paragraph one of the syllabus (1915)).

      Here, the affidavits of Marc Schambow and James Carter are redundant and immaterial to the issue before the Court. In both his affidavit and amended affidavit, Marc Schambow sets forth a chronology of events that reiterates the facts leading up to the accident and the state court proceedings. In fact, both affidavits restate facts alleged by Plaintiff in the Complaint. The affidavit does not present any additional facts that could be implied to affect the terms of the insurance contract. Since the terms of the insurance policy are neither ambiguous or uncertain, the affidavits offer nothing probative in the assessment of whether Defendant had a duty to defend or indemnify Tri-C.

      The affidavit of James Carter explains his search for an insurance contract, the execution of a

contract and his interpretation of what the insurance contract contained–all redundant evidence since the parties concede that Tri-C was an additional insured and copies of the insurance contract have been filed in the case.  Mr. Carter's interpretation of the contract is not relevant to the legal determination of whether Defendant had a duty to defend or indemnify Tri-C.

Although the Magistrate has effectively dismissed the case by finding that Defendant had no duty to defend or indemnify Tri-C, the Motion to Strike is granted.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket No. 7) is granted, Plaintiff's Motion for Summary Judgment is denied (Docket No. 19), Defendant's Motion for Extension of Time is denied as moot (Docket No. 21) and Defendant's Motion to Strike is granted (Docket No. 23). There being no further issues pending with the Court, the case is dismissed.

So ordered.

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date: September 28, 2007